No. 20,611.

## THE STATE OF KANSAS, *Appellee*, v. A. M. COVINGTON, *Appellant*.

### SYLLABUS BY THE COURT.

1. ATTEMPT TO COMMIT RAPE—*Evidence for the jury.* In a prosecution for an attempt to commit rape, the character and extent of the resistance of the woman are questions for the jury to determine.

2. SAME. In this case it is held that there is sufficient evidence of overt acts showing an intent coupled with an actual or apparent present ability to complete the offense.

3. SAME—*Trial—Objections to Evidence Without Merit.* Objections to testimony on the ground that the questions called for the conclusion of the witness held to be without merit.

4. SAME—*Former Visit of Defendant—Explanation.* In a prosecution for an attempt to commit rape the defendant brought out the fact that on another occasion he had visited at the house of complaining witness. *Held,* not prejudicial error to permit the complaining witness to state, in explanation of the circumstances of the former visit, that he came for the same purpose.

5. SAME — *Collateral Issue — Evidence — Conversations Between Complaining Witness and Her Husband—Instructions.* Under the circumstances stated in the opinion there was no prejudicial error in permitting the complaining witness to testify to a conversation between herself and husband which occurred prior to the alleged assault, and which referred to an alleged attempt by defendant to commit the same offense upon another woman, the court having charged the jury not to consider any statements in reference to an assault on the other woman as any evidence tending to show that such assault was in fact made.

6. SAME — *Requested Instructions Properly Refused.* Certain instructions requested by defendant are held to have been inapplicable in a case where the corroborating testimony was not purely circumstantial. Other requested instructions are held to have been properly refused because covered by instructions given.

7. SAME — *Requested Instructions Properly Refused — Outcry of Complaining Witness.* An instruction that if the complaining witness failed to make any outcry or concealed the attempt for any length of time after she had an opportunity to complain, these and like circumstances would carry a strong presumption that her testimony was false, was properly refused on the ground that in this case there was no concealment of the attempt, and the testimony showed that the husband discovered the attempt while it was being made.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed November 11, 1916. Affirmed.

*W. E. Mahin,* of Osborne, *F. W. Mahin,* and *I. M. Mahin,* both of Smith Center, for the appellant.

*S. M. Brewster,* attorney-general, *W. S. Rice,* county attorney, *A. W. Relihan, T. D. Relihan,* and *E. S. Rice,* all of Smith Center, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant appeals from a conviction of the charge of an attempt to commit rape.

The complaining witness, a woman twenty-six years old, is the wife of C. C. Lewis, the depot agent at the village of Cedar. Defendant is a single man forty years old. The Lewis home is north of the railroad track and two or three blocks from the station. Defendant's home was about thirty yards distant from that of the complaining witness and he was in the habit of getting water from a well at the Lewis house. Other houses in the immediate neighborhood were two blocks distant, the view from them being to some extent obscured by growing crops. Complaining witness testified that she was out in the yard about one o'clock in the afternoon looking for her three-year-old child, who was down near the premises of the defendant; that defendant came over to her yard and had some conversation with her and tried to induce her not to go to look for her child; that he kept following close to her and that she backed away from him but he continued following her; that she told him not to lay his hands on her and gave him a push. She said that she ran into the house and tried to shut the screen door, but he prevented her from doing so and followed her into the house and into her bed room where he grabbed her and forcibly threw her on the bed. Her testimony is that she scuffled with him and made all the resistance possible, and told him that she had sent her little girl to the depot for her husband, although the little girl was at school, and that her husband would soon be there and would kill him and that she would kill him when she got up. About this time her husband appeared at the house.

C. L. Draper, who had been driving along the road, testified

The State v. Covington.

that he saw the defendant following Mrs. Lewis up; saw her dodge to get away from him in the yard; saw him intercept her, and saw her strike several times at the defendant. Draper drove to the depot where the husband was and told him to go down to his house, that there was something wrong and that Covington and his wife were having trouble. Lewis got on a horse and rode home immediately. Lewis testified that when he came to the door he saw his wife struggling with the defendant on the bed, and he went upstairs to get a revolver, because he was a cripple, and did not feel equal to a physical encounter with the defendant. Immediately thereafter the defendant ran out of the house, leaving his hat on the floor, and Lewis shot at him from an upstairs window. Mrs. Lewis went upstairs and told him not to kill defendant, as Covington had not accomplished his purpose. He ordered his wife to go to the depot, and shortly thereafter followed her there. The defendant went to a mill a few blocks distant and sent word to the miller that he wanted to see him, and when the miller came endeavored to sell his hogs to him in order to get money to leave town. He was shortly thereafter arrested.

It is urged that the verdict and judgment are not supported by the evidence. This claim is based to some extent upon the fact that the complaining witness admitted she did not scream or call out, but she said that she did not think of that. It is insisted that since there is no evidence that she made an outcry the jury were not justified in finding that there was an attempt to commit a rape. She explained to the satisfaction of the jury her efforts to prevent the accomplishment of the crime of rape, and the character and extent of her resistance were questions for the jury to determine.

It is argued that the evidence did not sustain the charge that there was an attempt to commit a rape because it goes no further than to show acts which were merely preparatory to the commission of a crime and not such as would lead to its commission. Authorities are cited to the effect that "to constitute an attempt to rape there must be something more than mere preparation; there must be some overt act with intent to commit the crime, coupled with an actual or apparent present ability to complete the crime." (33 Cyc. 1431.)

In *In re Lloyd, Petitioner*, 51 Kan. 501, 33 Pac. 307, it was said:

"Before there can be a conviction in such a case, there must be not only the criminal intent, but overt acts toward the commission of the offense must be proven; and the attempt must progress sufficiently toward execution to clearly show the criminal intent of the defendant." (Syl. ¶ 3.)

We think there was sufficient evidence of overt acts which showed an intent coupled with an actual or apparent present ability to complete the offense. There was some evidence that an attempt to commit rape was prevented by the appearance of the husband. How long the woman's resistance might have prevented it, of course, is mere speculation. We are not impressed with the argument advanced that the evidence shows defendant did nothing more than a woman might have done toward the complaining witness.

The objection to some of the testimony on the ground that the questions called for the conclusion of the witness is without merit. Another contention of the defendant is that after his counsel had asked the complaining witness whether the defendant had not been there at her house another time, the court permitted her to testify on redirect examination that he had been there about three weeks before and that he came for the same purpose. On recross-examination the same question was asked her and she testified to the same effect. We think the evidence was competent as some evidence of defendant's intent in following the complaining witness into the house at the time charged in the information. The defendant first brought out the fact that he had been at the house before, and it was proper to permit the complaining witness to explain the circumstances of his former visit. The court instructed the jury to disregard the answer of the witness where she stated what she supposed his purpose was in coming to the house.

It is contended that there was prejudicial error in permitting the complaining witness to testify to a conversation between herself and her husband which occurred some time before the alleged assault. In cross-examining Mrs. Lewis she was asked:

"Q. Why was it you did n't tell your husband the first time? A. It was this: We had talked about him attempting to rape Mrs. ———."

Here an objection was interposed to any conversation with her husband for the reason that the question asked her did n't call for any such answer. The objection was overruled, and counsel for defendant again asked her:

"Q. Tell why you did n't want to tell him the first time. A. The reason I did n't tell my husband; we had talked about him attempting to rape Mrs. ———. He said if he tried that on a woman of his he would kill him, and for that reason I did n't tell him. I was afraid my husband would be punished. He had n't any money to get out of it and I had no way to support myself and children, and knew he would kill him. I don't know that anyone ever told me he tried to rape Mrs. ———. Mrs. ——— never did.

"Q. So nobody up to that time had told you and nobody has told you since that time that he ever attempted to rape anybody? A. I don't know that they have, not in plain words."

The defendant asked the court to instruct the jury to disregard the statements of the witness as to the alleged attempt to rape the other woman, but the request was denied. At the conclusion of the testimony, however, the court charged the jury not to consider any statements of Mrs. Lewis in reference to an assault on the other woman as any evidence tending to show that such assault was in fact made. We think there was no error within the rule declared in *The State v. Marsee*, 93 Kan. 600, 144 Pac. 833. In that case a conviction was set aside because the state was permitted to introduce evidence of a collateral issue strongly tending to arouse passion against the defendant, the evidence admitted being to the effect that the defendant had been accused by his own daughter of attempting improper liberties with her. In the present case, the defendant, after having discovered how the witness proposed to answer the question, insisted upon having her state why it was that she had not informed her husband of what occurred at defendant's previous visit. Having insisted upon getting in the evidence as to the collateral issue, the defendant ought not now to have the right to claim that he was prejudiced by the answer. Besides, the court instructed the jury not to regard it as any evidence of the former offense. For the same reasons we think there was no error in refusing instructions asked by the defendant withdrawing from the consideration of the jury for any purpose statements with reference to an assault upon the other woman.

The defendant was a witness, and while he admitted that he had been present at the house, he denied any attempt to commit the. offense charged. He admitted having the conversation with the miller at the time he tried to sell his hogs, but denied any intention of having intercourse with the complaining witness. His explanation of what occurred in the yard was that he and Mrs. Lewis were both in fun. He testified that he did not know of any reason why he followed her into the house. It is to his credit that he made no attempt to blacken the character of the complaining witness, although the inference was attempted to be left with the jury that his presence at the house was not in any way resented by her, and that their relations were entirely friendly. Mrs. Lewis admitted she made no attempt to explain to her husband at the house how the defendant came to be there; and there was some evidence that afterwards, when her husband came to the depot, he was angry with his wife and swore at her. She testified, however, that he was angry becau·₂ she had not informed him of the fact that the defendant had been at the house the first time. All these matters, however, were questions for the jury. They have passed upon the evidence and found the defendant guilty. There was no error in refusing the requested instructions. Some of them were wholly inapplicable. There was direct evidence of two others besides the complaining witness, tending to support her version of the affair, and some of the instructions requested would be applicable only in a case where the corroborating testimony was purely circumstantial. Some of the requested instructions were fully covered by those given. The court properly refused to. give requested instruction No. 7, that if the complaining witness failed to make any outcry at the time, or concealed the attempt for any length of time after she had an opportunity to complain, these and like circumsances would carry a strong presumption that her testimony was false. There was no concealment in this case of the attempt. Her husband testified that he discovered the attempt while it was being made. It would not be proper for the court, under the circumstances, to charge that her failure to make an outcry that could have been heard by others carried any such presumption.

We find no error in the record and the judgment will be affirmed.